IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES J. HACKETT,  )
)
    Plaintiff,  )
)
v.  )    Case No. 00C 3140
)    Judge Norgle
)
XEROX CORPORATION LONG-TERM  )
DISABILITY INCOME PLAN, ET AL.  )
)
    Defendants.  )
)

**DOCKETED**
JUL 2 6 2004

**FILED**
JUL 2 3 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

THOMPSON COBURN LLP

Richard J. Pautler
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000

Attorneys for Defendants
Xerox Corporation Long-Term
Disability Income Plan,
Xerox Corporation

CHARYSH & SCHROEDER, LTD

Michael J. Charysh
33 North Dearborn
Suite 1300
Chicago, Illinois 60602
(312) 372-8338

Attorneys for Health International, Inc.

2339489



# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 1

I.  PLAINTIFF HAS NOT ESTABLISHED THAT HE IS ENTITLED TO FEES UNDER ERISA ........................................................................................ 5

    A. Relevant Law ..................................................................................... 5

    B. Defendants' Position Was Substantially Justified ............................ 6

    C. Fundamental Fairness and Equity Do Not Warrant an Award of Fees ..... 9

II. IN THE EVENT THE COURT DETERMINES PLAINTIFF IS ENTITLED TO AN AWARD OF FEES AND COSTS, THE AMOUNT OF FEES AND COSTS SHOULD BE SIGNIFICANTLY REDUCED ........................... 11

    A. Plaintiff Has Provided Inadequate Documentation To Support The Billing Rates ..................................................................................... 13

    B. Plaintiff Provided Inadequate Documentation To Support The Amount Of Fees Requested ........................................................................... 16

        1. Vague time entries should be subtracted or reduced ................ 17

        2. Block-billing should be subtracted or reduced ........................ 19

    C. Plaintiff Should Not Be Awarded Fees For Time Spent On Non-Meritorious Claims ............................................................................ 20

    D. The Amount In Fees Requested Is Utterly Unreasonable and Should Be Reduced ........................................................................................... 22

        1. The case was overstaffed ......................................................... 22

        2. The time recorded is patently unreasonable ............................ 24

            a. The Complaint ................................................................ 24

            b. Service and Summons ..................................................... 25

            c. Discovery ........................................................................ 25

            d. Summary Judgment ........................................................ 26

III. COSTS .................................................................................................... 26

CONCLUSION .................................................................................................. 29

# TABLE OF AUTHORITIES

## CASES

**Page**

**Supreme Court**

Hensley v. Eckerhart, 461 U.S. 424 (1983) .................................................................. 11, 19

Pierce v. Underwood, 487 U.S. 552 (1988) ............................................................................ 8

**Court of Appeals**

Agreendano v. Mutual of Omaha Co., 75 F.3d 541 (9th Cir. 1995) ............................... 25

Bittner v. Sadoff & Rudoy Inds., 728 F.2d 820 (7th Cir. 1984) ........................................ 5

Cooper v. Casey, 97 F.3d 914 (7th Cir. 1996) ..................................................................... 13

Filipowicz v. American Stores Benefit Plans Comm., 56 F.3d 807 (7th Cir. 1995) ...................... 4

Hackett v. Xerox Corp. Long-Term Disability Income, 315 F.3d 771 (7th Cir. 2003) ................................................................................................. 2, 6

Haroco v. American Nat'l Bank & Trust of Chicago, 38 F.3d 1429 (7th Cir. 1994) ................... 27

Harper v. City of Chicago Heights, 223 F.3d 593 (7th Cir. 2000) ................................. 16

Holland v. Valhi, Inc., 22 F.3d 968 (10th Cir. 1994) ........................................................ 25

Hooper v. Demco, Inc., 37 F.3d 287 (7th Cir. 1994) ........................................................... 5

Keifel v. Las Vegas Hacienda, Inc. 404 F.2d 1163 (7th Cir. 1968) ................................ 28

Mathur v. Board of Trs. of S. Ill. Univ., 317 F.3d 738 (7th Cir. 2003) ......................... 11

Meredith v. Navistar Intern. Transp. Corp., 935 F.2d 124 (7th Cir. 1991).................... 5

Moran v. Rush Prudential HMO, Inc., 230 F.3d 973 (7th Cir. 2000)............................. 9

Moriarty v. Svec, 233 F.3d 955 (7th Cir. 2001) ............................................................... 19

Northbrook Excess & Surplus Ins. Co. v. Proter & Gamble Co., 924 F.2d 633 (7th Cir. 1991) ........................................................................................ 26

People Who Care v. Rockford Bd. of Educ. Sch .Dist., No. 205, 90 F.3d 1307 (7th Cir. 1996) ........................................................................................ 13

Production & Maint. Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp., 954 F.2d 1397 (7th Cir. 1992) ............................................................. 7

Quinn v. Blue Cross & Blue Shield Ass'n, 161 F.3d 472 (7th 1998)................................. 4, 5, 7, 8

Trustmark Life, Ins. Co. v. Univ. of Chicago Hosp., 207 F.3d 876 (7th Cir. 2000) .................. 6, 8

Uphoff v. Elegant Bath, Ltd., 176 F.3d 399 (7th Cir. 1999)......................................... 25

Wahl v. Carrier Mfg., 511 F.2d 209 (7th Cir. 1975)................................................ 28

## District Court

Abbott v. Village of Winthrop Harbor, 1999 WL675292, at *4 (N.D. Ill. Aug. 29, 1999) ................................................................................... 17, 19

Bennett v. Smith, 2002 WL 169323, at *5 (N.D. Ill. Feb. 1, 2002) ....................... 19, 20

Cristancho v. National Broad. Co., 117 F.R.D. 609 (N.D. Ill. 1987) ..................... 18, 19

Hackett v. Xerox Corp. Long Term Disability Income Plan, 177 F. Supp. 2d 803 (N.D. Ill. 2001)........................................................................ 1, 2, 5, 10

Harkin v. Riverboat Serv., Inc., 286 F. Supp. 2d 976 (N.D. Ill. 2003)......................... 27

In re Chicago Lutheran Hosp. Assoc., 89 B.R. 719 (Bankr. N.D. Ill. 1988) .................... 19

Independence Tube Co. v. Copperweld Corp., 543 F. Supp. 706 (N.D. Ill. 1982) ............ 26

JMS Dev. Co. v. Bulk Petroleum Corp., 2002 WL 31101664, at *3 (N.D. Ill Sept. 19, 2002) ..................................................................................... 18

Kinney v. Federal Sec., Inc., 2002 WL 31017644, at *6 n. 6 (N.D. Ill. Sept. 9, 2002) ..................................................................................... 18

Litchey v. Hartigan, 1991 WL 96435 at *4 (N.D. Ill. May 31, 1991)........................... 16

Max M. v. Illinois State Bd. of Educ., 684 F.Supp. 514 (N.D. Ill. 1988)..................... 16

McClain v. Owens-Corning Fiberglass Corp., 1663 WL 650524, at *5 (N.D. Ill. 1996) ..................................................................................... 26

Pearson v. Edgar, 1999 WL 169415, at *3 (N.D. Ill. Mar. 22, 1999)........................... 23

Purnell v. Kovitz Shifrin & Waitzman, 1996 WL 521401 (N.D. Ill. 1996) .................... 24

Riter v. Moss & Bloomberg, Ltd., 2000 WL 1433867 (N.D. Ill. Sept. 26, 2000)................ 24

Schnuckel v. The Prudential Ins. Co. of Am., 2003 WL 21877632 at *1 (N.D. Ill. Aug. 7, 2003) ..................................................................................................... 14, 25

Spegon v. Catholic Bishop of Chicago, 989 F.Supp. 984 (N.D. Ill. 1998)........................... passim

Stark v. PPM Am., Inc., 2003 WL 21223268, at *5 (N.D. Ill. May 23, 2003)...................... 16, 28

Sullivan v. Gill, 2000 WL 263726, at *2 (N.D. Ill. Feb. 28, 2000) ............................................. 23

## STATUTES

**Statutes**

28 U.S.C. § 1920.......................................................................................................................... 25

29 U.S.C. § 1001 et seq......................................................................................................... 1, 4, 25

## LOCAL RULES & FEDERAL RULES OF CIVIL PROCEDURE

Local Rule 54.3 .......................................................................................................................... 3, 4

Rule 54(d)(1) of the Federal Rules of Civil Procedure ................................................................ 25

2339489

## INTRODUCTION

COME NOW Defendants Xerox Corporation Long-Term Disability Income Plan and Xerox Corporation ("Xerox") and Health International, Inc., ("HI) and hereby oppose Plaintiff's motion for attorneys' fees and costs in the above-captioned litigation. Plaintiff is requesting $449,644.25 in fees, while the Xerox Defendants incurred $85,659.50 in fees and HI spent only $21,100.00, including the appeal, for the same relevant time period. The Court should deny Plaintiff's request for fees because under the applicable standard he is not entitled to fees. Plaintiff cannot meet his burden to establish that fees are warranted in this case. In addition, Defendants oppose Plaintiff's fee petition because Plaintiff's documentation is inconsistent and woefully inadequate to support the amount of fees he is requesting. Moreover, Plaintiff has demanded that he be reimbursed for fees and expenses that are not recoverable. Finally, the amount of fees Plaintiff is requesting in his fee petition is entirely unreasonable for a case of this nature. Accordingly, the Court should deny or at the least significantly reduce Plaintiff's request for attorneys' fees and costs.

## BACKGROUND

Plaintiff brought a six-count complaint against the Defendants alleging violations under the Employee Retirement Security Income Act ("ERISA"), 29 U.S.C. § 1001 et seq., stemming from the termination of long-term disability benefits. As the Court is well-aware, in addition to challenging the termination of his benefits, Plaintiff contested issues such as the applicable scope of discovery, the binding effect of the Social Security proceedings, the standard of review, and the adequacy of the administrative record, and what were the actual Plan documents. Plaintiff also claimed that Defendants breached their fiduciary duties and failed to provide him with documents in a timely manner. The Defendants and the Court spent a great deal of time wrangling with Plaintiff's meritless contentions, and in the end, Defendants

2339489                                      - 1 -

prevailed on all of these issues. In fact, this Court granted Defendants' motion summary

judgment and denied Plaintiff's cross-motion for summary judgment. The Court ruled in the

Defendants' favor and found:

- Judicial estoppel, based on Defendants' role in assisting Plaintiff's receipt of Social Security benefits, had no application to the dispute because Defendants were not parties to the previous action. Hackett v. Xerox Corp. Long Term Disability Income Plan, 177 F. Supp. 2d 803, 808 (N.D. Ill. 2001). Furthermore, several years had passed and circumstances had changed, and therefore the Defendants' actions were not inconsistent with their actions in the Social Security proceedings. Id. The Court found there was "no authoritative support" for Plaintiff's argument supporting judicial estoppel. Id.

- Plaintiff's benefits did not vest in 1987. According to the Court, it was "obvious" that the 1987 document upon which Plaintiff based his argument was not the LTD plan, but rather a personnel manual. Id. at 813. Moreover, contrary to Plaintiff's position (which were based on "unsupported inferences"), the Defendants never admitted that the 1987 document was the governing plan. Id. at 814.

- Plaintiff's claim accrued in 1999 when his benefits were denied. Id. at 813.

- The 1996 Plan was the controlling plan, and it contained language that provided for an arbitrary and capricious standard of review. Id. at 815.

- Plaintiff received a "full and fair review." Based on the opinions of two medical doctors, HI reasonably determined that Plaintiff was no longer disabled Id. at 816. The Court further found that Plaintiff's numerous arguments that attempted to undermine the disability determination were unpersuasive. Id. ("[Plaintiff] is unable to marshal any argument that persuades the court that HI's decision was unreasonable.")

- The administrative record was adequate, and there was no authority to support Plaintiff's notion that ERISA "mandates specific record requirements." Id. at 824

- Despite Plaintiff's arguments to the contrary, the Service Agreement was not incorporated into the Plan. But in any event, HI complied with the Service Agreement and provided Plaintiff with the appropriate appeals process. Id. at 825.

- Plaintiff presented no evidence that he suffered any prejudice due to the Defendants' delay in producing Plan documents. Accordingly, the Court declined to award any amount in penalties (Plaintiff had requested $168,000 at a minimum, and $443,000 as the maximum in penalties). Id. at 825.

- HI had no "inherent" conflict of interest. Id. at 827. Plaintiff's "conjecture" that a conflict existed fell "well short of convincing the court that an actual conflict exists." Id.

- Plaintiff was not entitled to proceed with his breach of fiduciary duty claim against Xerox, because he had an adequate remedy at law. Id. at 829 ("[Plaintiff] failed to demonstrate, or even discuss, that there is not an adequate remedy at law.")

Plaintiff appealed the summary judgment decision, and on January 6, 2003, the Seventh Circuit affirmed in part and reversed in part. Contrary to this Court's findings, the Seventh Circuit held that the termination of Plaintiff's benefits was the result of arbitrary and capricious procedures, in that the reasoning behind the decision to terminate benefits was not adequately articulated. Hackett v. Xerox Corp. Long-Term Disability Income, 315 F.3d 771, 776 (7th Cir. 2003). Significantly, the Seventh Circuit did not find that Plaintiff was disabled. Id. at 777 ("nothing in this opinion should be read as expressing an opinion that [Plaintiff's] benefits should not be terminated in the future.") On all other points, Plaintiff either failed to appeal from this Court's ruling or the appellate court agreed with this Court. For example, the Seventh Circuit found Plaintiff's claim did not vest until 1999, that the 1996 Plan controlled, and that it provided the requisite authority for an arbitrary and capricious standard of review. Id. at 774. The Seventh Circuit remanded the case with instructions that Defendants were to retroactively to reinstate Plaintiff's benefits.

A certified copy of the Mandate with an attached copy of the opinion was filed with this Court on January 28, 2003. After the mandate was issued and without action by the Court, Defendant paid Plaintiff $91,169.15 in back benefits and reinstated him on the Plan.

Following the issuing of the Mandate and over the course of 12 months, Defendants received various documents from Plaintiff that were relevant to fees.[1] The documentation, however, was inadequate. The documentation showed inconsistent amounts that were billed,

---

[1]     Pursuant to Local Rule 54.3, the Xerox Defendants provided Plaintiff with their billing information in March 2003. Defendants' billing information is attached hereto as Exhibit 1.

much of it only contained summaries without narratives, many of the entries were block-billed or vague, and there was no evidence of expenses or costs. On at least four separate occasions Defendants requested that Plaintiff provide more specific information.

On April 2, 2004, in compliance with Local Rule 54.3, Defendants wrote Plaintiff's counsel a letter detailing their objections to Plaintiff's documentation and fee request. A copy of this letter, with exhibits, is found under Tab B of Plaintiff's Motion. On April 15, 2004, Plaintiff filed the present motion for fees and costs that is currently before the Court. Defendants objected to the timeliness of the motion and argued that the under the Local Rules, Plaintiff's motion was filed months out of time. The Court denied Defendants' motions to strike and agreed to consider Plaintiff's motion for fees and costs

Plaintiff requests that he be awarded $449,644.25 in attorneys' fees and $20,461.96 in costs and disbursements. Defendants will address Plaintiff's petition in three parts. First, Defendants will show that Plaintiff has not established that he is entitled to fees. Defendants' defense of this suit was not frivolous or undertaken to harass Plaintiff, and therefore, under Seventh Circuit law, Plaintiff is not entitled to an award of fees. In the event the Court determines Plaintiff is entitled to fees (which it should not), the amount Plaintiff has requested should be significantly reduced. In the second part of this brief, Defendants will address the amount of attorneys' fees Plaintiff has requested and Plaintiff's documentation (or lack thereof). Defendants will show why $449,644.25 in fees is patently unreasonably and not adequately documented. Finally, in the third section of the brief the Defendants will address costs.

## I. PLAINTIFF HAS NOT ESTABLISHED THAT HE IS ENTITLED TO FEES UNDER ERISA

### A. Relevant Law

Attorneys' fees and costs under ERISA are by no means automatic. The statute vests courts with the discretion to award reasonable fees and costs.[2] 29 U.S.C. § 1132(g)(1). In the Seventh Circuit, two tests have been applied to determine whether a prevailing party deserves an award of attorneys' fees. Quinn v. Blue Cross & Blue Shield Ass'n, 161 F.3d 472, 478 (7th Cir. 1998). The first test involves the application of five factors: (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees would have a future deterrent effect on other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of a plan; and (5) the relative merits of the parties' positions. Id. (citing to Filipowicz v. American Stores Benefit Plans Comm., 56 F.3d 807, 816 (7th Cir. 1995)). Under the second test, the district court is to examine whether the losing parties' position was "substantially justified." Id. (citing to Bittner v. Sadoff & Rudoy Inds., 728 F.2d 820, 830 (7th Cir. 1984)). To be "substantially justified," the losing party's position needs to be "more than merely not frivolous, but less than meritorious." Id. The Seventh Circuit has stated that both tests ask essentially the same question: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent." Id. (citing to Hooper v. Demco, Inc., 37 F.3d 287, 294 (7th Cir. 1994); Meredith v. Navistar Intern. Transp. Corp., 935 F.2d 124, 128 (7th Cir. 1991)). Under the facts

---

[2]     Section 502(g) of ERISA, (29 U.S.C. § 1132(g)) provides: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action to either party."

of this case, it is clear that the Xerox Defendants litigated in good faith and they did not defend this litigation in order to harass Plaintiff.

### B. Defendants' Position Was Substantially Justified

Plaintiff filed a six-count complaint against Defendants seeking hundreds of thousands of dollars in damages. In December 2002, this Court ruled in Defendants' favor on all counts. In granting Defendants summary judgment, the Court ruled contrary of Plaintiff's positions and found (1) judicial estoppel did not apply, (2) the 1996 Plan documents controlled, (3) an arbitrary and capricious standard of review should be employed, (4) the 1987 employment policy was not the Plan but an employment manual and the document did not vest rights in Plaintiff, (5) the service agreement was not part of the Plan, (6) Plaintiff was not prejudiced nor entitled to statutory penalties for the delay in providing plan documents, (7) HI was not acting under a conflict of interest, (8) Plaintiff was barred from bringing a claim for breach of fiduciary duties, (9) Plaintiff had received a full and fair review, and the decision to terminate benefits was reasonable. Hackett v. Xerox, 177 F. Supp. 2d at 803. Earlier in the litigation, the Court also denied Plaintiff's motion to strike affidavits and to take discovery outside the administrative record. Plaintiff did not appeal all of these issues, but in regard to the issues he did appeal, the Seventh Circuit agreed with all of this Court's findings save one – it found that reasoning behind the decision to terminate benefits was not adequately documented, and therefore the termination procedures were arbitrary and capricious. Hackett v. Xerox, 315 F.3d at 776.

From the record it is clear that the positions Defendants took in this ligation were justified with a solid foundation in law. It was Plaintiff who took extreme positions on certain issues with no basis of authority. Plaintiff was unwavering in pursuit of his claims, including a demand that he be awarded over as much as $443,000 in statutory penalties. Defendants had no

choice but to defend the lawsuit. Defendants did not defend the suit in order to harass Plaintiff, but rather because Defendants needed to protect their interests and the interests of the other plan participants, and they believed their positions were meritorious. In fact, this Court agreed and granted Defendants summary judgment on all counts. Plaintiff did not even challenge on appeal this Court's ruling on the issue of statutory penalties.

On appeal, the Seventh Circuit did not find that the decision to terminate Plaintiff's benefits was incorrect or that Plaintiff was indeed disabled, but rather, the court held that the denial was not adequately documented. As the course of this litigation suggests, reasonable people disagreed as to the propriety or lawfulness of the denial of Plaintiff's benefits. This Court found the denial was not arbitrary, and that Plaintiff received a full and fair review, which is evidence that Defendants' positions were reasonable and defense of this suit was substantially justified. Trustmark Life, Ins. Co. v. Univ. of Chicago Hosp., 207 F.3d 876, 884-85 (7th Cir. 2000) (finding the losing party's was "substantially justified in pursuing the action" given that the lower court had ruled in its favor). Accordingly, there is no evidence, that Defendants pursued the defense of this litigation to harass Plaintiff and "for no good reason." Production & Maint. Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp., 954 F.2d 1397, 1405 (7th Cir. 1992). Therefore, applying Seventh Circuit law, Plaintiff cannot establish that he is entitled to an award of attorneys' fees.

Plaintiff's sole support for the contention that he is entitled to fees is his own assertion that Defendants' position was not substantially justified because the Seventh Circuit found that the termination procedures were arbitrary and capricious. See Plaintiff's Memorandum at 4. Plaintiff's position is untenable and without support. First, Plaintiff has provided no authority for the notion that a Plaintiff is entitled to fees if the Court finds that the plan administrator

2339489

- 7 -

abused his or her discretion in the denial of benefits. Second, it is clear under ERISA that prevailing parties are not automatically entitled to fees. But if one were to apply Plaintiff's logic, a prevailing plaintiff would be entitled to fees automatically whenever a court reversed a denial of benefits.

Plaintiff has misconstrued the fee standard. A finding that the benefits determination was arbitrary and capricious is not equivalent to a finding that the defense of the suit was not substantially justified. In fact, in <u>Quinn,</u> a decision frequently cited for ERISA's fee standard, the Seventh Circuit found that the plan administrator acted arbitrarily and capriciously in determining that plaintiff was not disabled, <u>but that the plaintiff was not entitled to an award of attorneys' fees.</u> 161 F.3d 472, 479.

More importantly, the facts of <u>Quinn</u> are nearly identical to the facts of the present case. In <u>Quinn</u>, like here, the Seventh Circuit found fault in the decision-making processes not the actual disability determination <u>Id.</u> at 476 ("[w]e emphasize, however, that we neither determine whether [the plaintiff] is disabled, nor whether [the plan administrator's] decision was incorrect, rather only that she denied [plaintiff's] benefits in an arbitrary and capricious manner.") The plan administrator in <u>Quinn</u> had relied on the medical opinions of two doctors (just like the plan administrator here) and found that the plaintiff was not disabled because she was capable of performing other jobs within her salary level. <u>Id.</u> at 479. The Seventh Circuit found that the decision was arbitrary and capricious because the plan administrator did not engage in a reasonable vocational inquiry. <u>Id.</u> But the Seventh Circuit then <u>reversed</u> the district court's award of fees. The court found that the defendant's position was not wholly unjustified nor had the defendant acted in bad faith. The court emphasized that the plan administrator had relied on the opinion of medical doctors, and therefore, an award of attorneys' fees was not warranted. <u>Id.</u>

("while [the disability] determination may have been arbitrary and capricious, it does not necessarily follow that it was wholly unjustified or made in bad faith.")

Although the Seventh Circuit ultimately found that the termination of Plaintiff's benefits was the result of arbitrary and capricious procedures in the present case, there is no evidence that Defendants acted in bad faith or took positions that were not substantially justified. Like the plan administrator in Quinn, HI relied on the opinions of two doctors and found Plaintiff was no longer disabled. The flaw was in the process, not the determination.

Reasonable people can disagree as to whether a disability decision or termination procedures were arbitrary and capricious. This Court performed a detailed analysis of the disability determination and found that the termination of Plaintiff's benefits was not arbitrary and capricious. As Plaintiff himself states, "a party's position is substantially justified when it is 'justified to a degree that could satisfy a reasonable person.'" See Plaintiff's Memorandum at 2 (citing to Trustmark, 207 F.3d at 884; Pierce v. Underwood, 487 U.S. 552, 65 (1988)). Without a doubt, defense of this suit was reasonable and substantially justified. Therefore, under binding Seventh Circuit law, Plaintiff's claim for fees should be denied.

**C.    Fundamental Fairness and Equity Do Not Warrant an Award of Fees**

Plaintiff argues that fundamental fairness and equity require an award of fees because he was a prevailing participant, and ERISA was designed to protect the interests of participants. Plaintiff's argument again misses the mark. Under the Plaintiff's view, all prevailing participants would be entitled to fees. But this reasoning does not comport with ERISA fees' provision, which is discretionary, not mandatory. Furthermore, the statute provides that fees may be awarded to either party, not only participants. Defendants do not dispute that ERISA was designed to promote and protect the interests of participants, but the drafters of ERISA also

intended that the statute would strike a balance by keeping costs down so that employers would continue to offer their employees benefits. <u>Moran v. Rush Prudential HMO, Inc.</u>, 230 F.3d 973 (7th Cir. 2000). Awarding attorneys' to all participants who prevail in litigation would escalate the costs of providing employee benefits, which is contrary to the purpose of ERISA.[3]

Plaintiff has provided no justification to support an award of fees, aside from the claim that he is entitled to fees because he succeeded on one claim. If one applies the five-factor test of <u>Filipowicz</u> to the facts of the case (which Plaintiff failed even to address), it is obvious that an award of fees is not warranted. 65 F.3d 816. There is no evidence that Defendants litigated this case in bad faith. In fact, this factor weighs against Plaintiff, who pursued claims and issues that were patently without merit or support. Defendants are entities with the assets to cover an award of fees, but an extremely large award of attorneys' fees would increase the costs of providing benefits for other plan participants. In addition, Plaintiff has the resources to pay for his own fees. There is evidence that Plaintiff is a person of some means, as he paid more than $262,000 in attorneys' fees pursuing the $90,000 claim. <u>See</u> Exhibit 2 attached hereto. An award of attorneys' fees in this case would have no future deterrent effect, especially in regard to the Xerox that sponsored the Plan. In fact, it may provide incentive for unscrupulous plaintiffs attorneys to refuse to settle suits or to pursue frivolous claims. <u>Spegon</u>, 989 F. Supp. at 988.

---

[3]     Plaintiff asserts that fee awards "provide the only incentive for ERISA plan administrators to pay ERISA claims." <u>See</u> Plaintiff's Memorandum at 5. On the contrary, plan administrators pay valid ERISA claims because they are required to do so. Furthermore, paying valid claims makes good business sense and fosters goodwill. A more accurate description of the situation is that attorneys' fees provide incentives for plaintiffs lawyers to pursue meritless claims or to withhold settling claims that should be settled in order collect "reasonable" fees. <u>Spegon v. Catholic Bishop of Chicago</u>, 989 F.Supp. 984, 988 (N.D. Ill. 1998) ("all too frequently . . . the only obstacle standing in the way of a settlement . . . is the Plaintiff's lawyer and his unreasonable demand for fees.")

Plaintiff did not pursue this litigation for the benefits of all participants, but rather he sought

benefits solely for himself. Finally, Defendants prevailed on the majority of the issues.

Defendants lost only on the documentation of the decision to terminate benefits. In sum, the

five-factors weigh against an award of fees, and Plaintiff has offer to other valid justification for

an award of fees.

When one steps back and looks at the big picture, it is evident that Plaintiff should not

receive an award of fees. Looking through the parties' briefs and the memoranda from this

Court, it was Plaintiff who took extreme positions without solid foundation. He raised issues and

took positions that were contrary to clearly established under ERISA law or that had no basis of

authority. See Hackett v. Xerox, 177 F. Supp. 2d at 808, 813-14, 816, 824, 827, 829 (Plaintiff's

positions had "no authoritative support," were based on "unsupported inferences" and

"conjecture," and he "failed to demonstrative, or even discuss" the relevant law). The

Defendants devoted hours opposing Plaintiff's meritless and sometimes frivolous positions, and

the Court wasted time addressing these groundless issues as well. In Defendants' estimation, it

was Plaintiff who harassed and attempted to wear down Defendants with needless arguments and

meritless claims. The entire litigation could have been streamlined and settlement might have

been feasible had Plaintiff not raised baseless issues and claims that consumed so much of the

Defendants' and the Court's time. For all the above reasons, the Court should deny Plaintiff's

motion for attorneys' fees and costs in its entirety.

**II.    IN THE EVENT THE COURT DETERMINES PLAINTIFF IS ENTITLED TO
         AN AWARD OF FEES AND COSTS, THE AMOUNT OF FEES AND COSTS
         SHOULD BE SIGNIFICANTLY REDUCED**

In determining the amount of attorney's fees and costs to award, the burden is on the

party seeking the award to sufficiently document and substantiate the hours worked and the rates

2339489                                    - 11 -

claimed. The starting point for calculating fees is the calculation of the "lodestar figure." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Mathur v. Board of Trs. of S. Ill. Univ., 317 F.3d 738, 742 (7th Cir. 2003). The lodestar is the product of an attorney's reasonable hourly rate by the number of hours reasonably expended. Hensley, 461 U.S. at 434. The Court must exclude from this calculation hours that are not well documented or were not "reasonably expended" on the litigation. Id. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Id. In addition, the Court should reduce the number of hours claimed by the number of hours spent litigating unsuccessful claims Id. at 434-435; Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999). District courts should "winnow[ ]the hours actually expended down to the hours reasonably expended." Spegon, 175 F.3d at 552.

In order for the Court to engage in the proper analysis, the party seeking fees must present adequate documentation. Plaintiff has requested $449,644.25 in fees and $20,461.96 in costs. In support of this request, Plaintiff has supplied documentation that is vague, does not separate time entries, and is riddled with inconsistencies. Plaintiff provided the Court with the following documentation:

1.  "Summary of Charges" for Gardner, Carton & Douglas. See Tab A of Plaintiff's Motion. The Summary lists the attorneys who worked on the case,[4] the amount of hours they billed, and the fees they incurred from August 1999 through September 2002. The "Grand Total" for this summary amounts to **$459,479.25**.

2.  "Billing and Payment History" from Gardner, Carton & Douglas dated December 22, 2003. See Tab 2 of Plaintiff's Motion. The document lists fees, disbursements, and payments from March 3, 1990 through February 10, 2003. There are no descriptions of the work performed. The document indicates that

---

[4]    According to Plaintiff, attorneys who billed less than $2,500 were "gratuitously eliminated."

during this time-span, Gardner, Carton & Douglas billed Plaintiff for **$334,785.93** in fees and $20,097.91 in disbursements.

3.  Two spreadsheets from Gardner, Carton & Douglas covering August 25, 1999 through September 30, 2002. See Tab 2 of Plaintiff's Motion. The first spreadsheet totals $285,858.08 and the second totals $29,115.00. Added together, the grand total for these two spreadsheets amounts to **$314,973.08** in fees. The documents provide the date the work was performed, descriptions of the work, the name of the relevant timekeeper, the number of hours worked, and the amount billed.

4.  Summaries of the invoices for Gardner, Carton & Douglas. See Tab 2 of Plaintiff's Motion.

5.  Invoices from Gardner, Carton & Douglas dating from October 1999 through August 2002. See Tab 2 of Plaintiff's Motion. The invoices include attorneys' fees as well as disbursements. Many of the invoices are missing pages. Attached to the invoices are what appear to be pre-bills.

6.  "Pre-bill Worksheet" from Daley, DeBofsky & Bryant dated March 3, 2003. See Tab 3 of Plaintiff's Motion. The worksheet contained narrative time-entries and totals $35,132.50 in fees.

7.  Ledger Information dated April 14, 2004, from Daley, DeBofsky & Bryant, showing 27.25 hours and $14,931.66 in fees. See Tab 3 of Plaintiff's Motion.

8.  Bill of Costs from Seventh Circuit totaling $1,119.15. See Tab 4 of Plaintiff's Motion.

9.  Declaration of Mark Furlane. See Tab 5 of Plaintiff's Motion.

10. Declaration of Mark D. DeBofsky. See Tab 6 of Plaintiff's Motion.

11. Declaration of Mary Ellen Signoville, an attorney from Washington D.C. See Tab 7 of Plaintiff's Motion.

12. Declaration of Ronald Dean, and attorney from California See Tab 8 of Plaintiff's Motion.

**A.**   **Plaintiff Has Provided Inadequate Documentation To Support The Billing Rates**

A party seeking fees bears the burden of establishing that the attorneys' billing rates are

reasonable and reflect the prevailing market rate for lawyers engaged in the type of litigation in

which the fee is being sought. Cooper v. Casey, 97 F.3d 914, 920 (7th Cir. 1996); People Who
Care v. Rockford Bd. of Educ. Sch.Dist., No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996). Plaintiff
has not met his burden in this regard. In support of the billing rate for Mr. DeBofsky of
$300.00 - $375.00 an hour, Plaintiff submitted two affidavits – one from an attorney in
Washington, D.C. and the other from an attorney in California. See Tabs 7 and 8 of Plaintiff's
Motion. Defendants object to the affidavits because the declarants are attorneys who do not
practice in the Northern District of Illinois. Both affiants opine that Mr. DeBofsky's rates are
reasonable considering his level of expertise, but neither affidavit however states that
Mr. DeBofsky's rates are comparable to the market rates in the Chicago area, or even whether
the affidavits have the basis of knowledge to make such an assertion. Plaintiff seems to rely on a
so-called "national rate" for ERISA attorneys. This flies in the face of Seventh Circuit law,
which specifically provides that courts are to employ the "prevailing market rate." Id.
Mr. DeBofsky tries to support his rates by provided his own self-serving affidavit. See Tab 6 of
Plaintiff's Motion. Under Seventh Circuit law, it is clear that Plaintiff cannot meet his burden
with such an affidavit. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 554 (7th Cir. 1999)
("An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing
the market rate for that attorney's services.") Accordingly, Plaintiff has failed to establish a
reasonable rate for Mr. DeBofsky.

Plaintiff's documentation for the rates charged by Gardner, Carton & Douglas is even
more inadequate. Plaintiff supports these rates with an affidavit from one of the firm's own
attorneys, Mark Furlane. See Tab 5 of Plaintiff's Motion. Apparently Gardner, Carton, &
Douglas could not find any third party to vouch for the reasonableness of its rates. Again, such
an affidavit is completely inappropriate. Spegon, 175 F.3d at 554. Not surprisingly, Mr. Furlane

opines that his rates and the rates of the attorneys at his firm are reasonable. He supports this assertion by stating that the firm annually performs analyses of the market rates in the Chicago area, however, Mr. Furlane does not provide the results of these market studies. Therefore, it is impossible to tell if the studies were fair and accurate, or if the firm's rates are even comparable to the market rates that were found in the studies. Moreover, Mr. Furlane attests that the firm undertakes these studies and then assigns billing rates, but no where in the affidavit does Mr. Furlane state that the assigned billing rates are on par with the market rates. This is no different from the self-serving affidavit in <u>Schnuckel v. The Prudential Ins. Co. of Am.</u>, wherein the attorneys seeking their fees stated that they were familiar with the "customary and reasonable rates of partners in Chicago and their rates were reasonable and the market rate." 2003 WL 21877632 at *1 (N.D. Ill Aug. 7, 2003). There, Judge Plunkett found documentation entirely inadequate, and he lowered the rates significantly. <u>Id.</u> at *2 (lower from $250 to $125 and from $250 to $215). Likewise, this court should lower the rates charged by the Gardner, Carton & Douglas law firm, and Defendants would suggest lowering the rates to rates that are comparable to those charged by Defendant's attorneys. <u>See</u> Exhibit 1 attached hereto.

Defendants also object to the affidavit because it does not detail the level of experience or knowledge of the attorneys at Gardner, Carton & Douglas. Mr. Furlane states that he has been practicing since 1975, but he makes no representations regarding his experience with ERISA actions or even his litigation experience. As for the other attorneys in the firm, there is nothing to indicate their levels of experience or expertise. In fact, one cannot tell who is a partner and who is an associate, and from a note on an invoice it appears that Ms. Bentz and Mr. Goetz were

2339489                                    - 15 -

very inexperienced.[5] What is more, Sally A. Comin, an attorney listed on the summary, is not even mentioned in the affidavit.

## B. Plaintiff Provided Inadequate Documentation To Support The Amount Of Fees Requested

Although Plaintiff has requested $459,479.25 (minus a $50,000 write-off) for attorneys' fees incurred by Gardner, Carton & Douglas, he has provided no valid documentation supporting this amount. The "Summary of Charges" lists $459,479.25 in fees, but this is a prepared summary with no indication as to the source of this figure. The "Billing and Payment History," dated December 22, 2003, indicates that only $334,785.93 was billed in fees; and the two spreadsheets, which actually provide a description of the work performed by the firm, only total $314,973.08 in fees. In other words, there is a $144,506.17 discrepancy in the amount of fees claimed by Gardner, Carton & Douglas. What is more, Plaintiff represented to Defendants that he paid this large amount of fees to Gardner, Carton, & Douglas.[6] Skeptical of the claim, Defendants asked that Plaintiff provide proof of payment. On June 22, 2004, Plaintiff faxed Defendants copies of cancelled checks made payable to the firm that only total $262,094.74. See Exhibit 2 attached hereto. As this amount presumably includes costs, it appears that Plaintiff

---

[5]     A $9,000 write-off was approved because "Mark [Furlane] felt the amount of time expended on the matter by Mona Benz (sic) and Ray Goetz was far in excess of what is reasonable, given Mona and Ray's lack of litigation experience . . . [and] the litigation aspects of the project were beyond their experience." (Emphasis Added). See Exhibit J attached to Xerox's April 2, 2004 letter found under Tab B of Plaintiff's Motion. The $9,000 write-off should be subtracted from the fee request, and fees incurred by Ms. Bentz and Mr. Goetz should be further reduced.

[6]     Plaintiff has also argued in his brief that his payment of $340,000 in fees is evidence that the amount of fees is reasonable. See, Plaintiff's Memorandum at 7. First, Plaintiff has not demonstrated that he paid this amount in fees. Second, the fact that Plaintiff switched firms for the appeal, and paid significantly less for their service, suggests that Plaintiff did not feel the rates were reasonable.

received a write-off that was more than $50,000. Plaintiff has claimed $19,342.81 for expenses incurred by Gardner, Carton & Douglas, and using the two spreadsheets that total $314,973.08, it appears that the write-off for fees was closer to $72,221.15.[7] Because only the two spreadsheets provide any sort of description of the work performed, the Court should begin its analysis with the amount reflected on these documents, $314,973.08, and then subtract $72,221.15 for the write-off.

### 1. Vague time entries should be subtracted or reduced

The documentation from Gardner, Carton & Douglas is riddled with vague entries that do not provide an adequate description of the work performed. Caselaw requires that time records "clearly specify the worked performed, the date on which it was performed and the hours expended." Litchey v. Hartigan, 1991 WL 96435 at *4 (N.D. Ill. May 31, 1991) (citing Max M. v. Illinois State Bd. of Educ., 684 F.Supp. 514, 526 (N.D. Ill. 1988)). Vague descriptions fail to provide the court with any basis to determine whether the attorneys' work was necessary and reasonable, therefore they should be significantly reduced or stricken. Stark v. PPM Am., Inc., 2003 WL 21223268, at *5 (N.D. Ill. May 23, 2003). See also Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000) (a district court may either strike the vague entries or reduce the proposed fee by a certain percentage). More specifically, there are countless entries that note conferences between and among the attorneys at Gardner, Carton & Douglas, but the subject matters of many of these conferences are not noted. There are 99 entries, totaling 168.45 hours and $37,851.78 in fees, with unspecified internal conferences or with conferences on such vague topics as "status," "the case," or "the pleadings." See Exhibit B attached to Xerox's April 2,

---

[7]    If one uses the $459,479.25 figure, for which there is no documentation, it would seem Plaintiff received a $178,041.70 write-off, and not a $50,000 credit as Plaintiff has maintained.

2004 letter found under Tab B of Plaintiff's Motion. The Court should strike these entries.[8]

Abbott v. Village of Winthrop Harbor, 1999 WL675292, at *4 (N.D. Ill. Aug. 29, 1999).

Defendants also object to the time spent reviewing "documents," "the file," "the record," "the docket," "pleadings," and "cases" or "caselaw" for no appearent reason. Within 111 of the entries, amounting to 193.9 hours and $46,751.32 in fees, attorneys at Gardner, Carton & Douglas spent time "review[ing]" such documents with no stated reason. See Exhibit D found under Tab B of Plaintiff's Motion. Time spent reviewing documents without explanation should not be compensated as it impossible to tell if such review was necessary and reasonably related to the litigation.[9] The Court should discount each of these entries.

It is also remarkable that in many of the time entries the Gardner, Carton & Douglas attorneys did not specify what motion, brief, response, or memorandum they were working on, drafting or preparing. For example, on December 9, 2000, Mr. Furlane worked 8.25 hours, totaling $2,805.00 in fees, and he noted: *"conference with Mr. Condron on brief; draft brief; review defendant's brief; research regarding summary judgment issues."* From this entry there is no indication to which brief he was referring. One cannot ascertain whether Mr. Furlane was working on the summary judgment or an entirely different brief. The Court should subtract or

---

[8]      Moreover, Defendants object to the amount of internal conferences that were held in general. There are 254 entries, totaling 534.95 hours and $125,948.85 in fees, where attorneys at Gardner, Carton & Douglas noted that they participated in internal conferences Defendants recognize that conferring with co-counsel is part of litigation, but 534.95 hours spent conferring is excessive. See Exhibit C found under Tab B of Plaintiff's Motion.

[9]      In addition, there are 215 entries, totaling 484.4 hours and $114,414.33 in fees, wherein the timekeeper noted that he or she spent time "review[ing]." See Exhibit E found under Tab B of Plaintiff's Motion. This amount of time for "review" is excessive and should be reduced or stricken.

2339489                                    - 18 -

discount each and every entry where the timekeeper did not specify what motion, brief, response, or memorandum he or she was working on or preparing.

### 2. Block-billing should be subtracted or reduced

The vast majority of the entries from Gardner, Carton & Douglas are blocked-billed. That is, without indicating the time spent for the individual tasks, the recorded time is an accumulation of the amount of time spent on various tasks during the course of a day for a particular timekeeper. Block-billing is improper for two principal reasons. First, the Court cannot perform the required legal analysis to determine whether the time devoted to particular tasks or issues was reasonable or excessive. <u>Cristancho v. National Broad. Co.</u>, 117 F.R.D. 609, 610 (N.D. Ill. 1987); <u>JMS Dev. Co. v. Bulk Petroleum Corp.</u>, 2002 WL 31101664, at *3 (N.D. Ill Sept. 19, 2002) ("[b]lock billing is inappropriate and prevents the Court from assessing the reasonableness of the time expended on certain tasks.) Second, "it prevents the Court from determining the amount of time spent on compensable versus non compensable tasks." <u>Kinney v. Federal Sec., Inc.</u>, 2002 WL 31017644, at *6 n. 6 (N.D. Ill. Sept. 9, 2002).

The Gardner, Carton & Douglas bills are littered with entries that are block-billed. For example, on November 7, 2000, Mr. Furlane billed 6.5 hours for:

> *Conference with associate on motion to compel; telephone conference with Xerox attorney for 12k conference; draft motion to compel; attention to prepare for and attend hearing on motion to quash and 12k conference with HI attorney.*

On November 16, 2000, Mr. Roche recorded 7.9 hours for:

> *Draft, review and revise memorandum in support of motion to compel and memorandum in support of motion for summary judgment; review documents, the purported record, pleadings and correspondence relating to the memoranda; research and review cases to support the memoranda.*

And on March 7, 2001, Mr. Roache recorded 8.3 hours for:

2339489

- 19 -

> *Conference with Mr.[_]Condron regarding motions to be filed in response to supplemental affidavits; conference with Messrs.[_]Condron and Howell regarding limitations on the right to amend ERISA plans; draft, review and revise motion to strike and supplemental response in opposition to defendants' motion for summary judgment; review documents pleadings and affidavits relating to supplemental memorandum; research and review cases to support supplemental memorandum; limitations to amend ERISA plans and what language is required to give plan administrator discretion.*

Time spent on unsuccessful issues, such as the motion to compel, should not be reimbursed. See discussion infra. But from these blocked entries it is impossible to tell how much time was actually spent on non-compensable issues. It is also impossible to tell if the time spent on various tasks were reasonable. It is Plaintiff's burden to adequately document his fee request, and he has failed to do so. The Court should strike these fees in their entirety or they should be significantly reduced. Bennett v. Smith, 2002 WL 169323, at *5 (N.D. Ill. Feb. 1, 2002), Abbott, 1999 WL 67592, at *3; Cristancho, 117 F.R.D. at 610; In re Chicago Lutheran Hosp. Assoc., 89 B.R. 719, 735 (Bankr. N.D. Ill. 1988). See Exhibit A found under Tab B of Plaintiff's Motion, where the blocked billed time entries highlighted.

## C. Plaintiff Should Not Be Awarded Fees For Time Spent On Non-Meritorious Claims

Plaintiff was successful in regard to only one of the issues he raised. Under binding precedent, the Court should subtract the time Plaintiff's attorneys spent on unsuccessful claims, or it should proportionately reduce the amount of fees Plaintiff is requesting based on his limited success. Hensley, 461 U.S. at 434; Moriarty v. Svec, 233 F.3d 955, 968 (7th Cir. 2001) ("proportionality concerns are a factor in determining what a reasonable attorney's fee is.") Plaintiff's counsel devoted numerous hours to issues that proved to be wholly meritless and downright frivolous. Due to Plaintiff's actions, Defendants were required to incur unnecessary

fees addressing these issues as well and they should not be penalized twice for Plaintiff's unreasonable approach to this litigation.

As discussed above, this Court ruled in Defendants' favor on all outstanding issues and the Seventh Circuit reversed on the sole issue of the adequate termination determination. The majority of the issues raised by Plaintiff were either without authoritative support such as: judicial estoppel, vesting, accrual, standard of review, what constituted the Plan documents, record requirements, and the alleged conflict of interest; or they were wholly unrelated to the issue upon which he prevailed such as: the so-called failure to provide Plan documentation and breach of fiduciary duties. To the extent possible, the Court should subtract the number of hours Plaintiff's attorneys worked on these issues; Bennett, 2002 WL 169323 at *6 (subtracting fees for unrelated, unsuccessful claims); or, in the alternative, the Court should discount the award proportionately to reflect his limited success. Spegon, 989 F. Supp. at 990 (cutting lodestar figure in half). Considering that the time spent on these issues, (by defense counsel, the Courts and Plaintiff's counsel), was grossly disproportionate compared to the time spent on the one issue on which he did prevail, Defendants would suggest a 80 percent reduction.[10]

At the very least, the Court should subtract fees that were incurred in pursuit of discovery. See Exhibit M found under Tab B of Plaintiff's Motion. The case was pleaded as an ERISA case, and Plaintiff's counsel should have been aware that discovery is limited in ERISA cases. In spite of this fact, Gardner, Carton & Douglas pursued discovery, which the District Court ultimately ruled was improper.

---

[10]    See also the highlighted entries of Exhibit O, found under Tab B of Plaintiff's Motion, for time spent on issues on which Plaintiff did not prevail.

**D.** **The Amount In Fees Requested Is Utterly Unreasonable and Should Be Reduced**

**1.** **The case was overstaffed**

The case was entirely overstaffed. Over the course of three years, at least 13 different attorneys worked on the case for Plaintiff. In addition, there were six paralegals, two librarians, two law clerks, five proof readers, one docket clerk, and four persons whose titles are undisclosed.[11] Thirteen (or more) attorneys working on a case of this nature is complete overkill. Even if you subtract those persons who billed less than $2,500 on the case, there were still six attorneys who billed more than $2,500 on this case, based on the two narrative spreadsheets, (see Exhibit G found under Tab B of Plaintiff's Motion), or 10 attorneys, using Plaintiff's "Summary of Charges".

Overstaffing resulted in redundant efforts that should not be compensated. Throughout the bills from Gardner, Carton & Douglas there are examples of duplicated work. For example in the fall of 2000, Ms. Bentz, Mr. Condron, Mr. Goetz, Mr. Roache, and Mr. Furlane were all working on the case, and, in fact, all five were working on the response to Defendant's motion for summary judgment. Defendants submit that this work was duplicative and only served to run up the cost of litigation. As other examples, five attorneys participated in drafting the complaint, four attorneys worked on the motion to compel, and four attorneys worked on the discovery requests. These efforts were entirely redundant and duplicative.

---

[11] From the Gardner, Carton & Douglas law firm, Sally A. Comin is listed on the "Summary of Charges" and Dale Park and Michael Rhoades are listed on the in the bills, yet these three individuals are not referenced in Mr. Furlane's affidavit where he differentiated between the attorneys and support staff. On the bill from Daley, DeBofsky, & Bryant, there are three entries for "Nate," with no indication as to who Nate is. Also, Defendants object to the duplicative time entry for "Nate" on June 28, 2002.

Because the case was overstaffed, not only was repetitive work being done, but the attorneys were not used efficiently. Each new attorney who joined in the litigation was required to familiarize himself or herself with the facts of the case and relevant caselaw. As discussed above, there were hundreds of hours devoted to reviewing the file, documents, and cases. Overstaffing could account for some of these hours. In addition, the fact that there were so many attorneys working on the case could also account for why it took so many hours to complete some of the basic tasks of litigation, and why there were so many internal conferences. Defendants submit that this case could have and should have been staffed with a partner and one or two associates. Accordingly, it is Defendants' position that the fees should be reduced by at least two-thirds. The fact that Plaintiff deemed it necessary to retain new counsel for the appeal is also a fact that should not be ignored as a commentary on the quality (and perhaps quantity) of the representation he received before the district court.

Defendants also object to the fact that Plaintiff hired another law firm to work on his appeal and the Court should discount the fees accordingly. Upon taking the case, the new firm was required to familiarize itself the facts of the case and the record on appeal. Therefore, the Court should cut the time Mr. DeBofsky spent reviewing the file and the appellate record, which amounts to 13.8 hours and $4,140.00 in fees. Defendants also believe that they should not be required to pay the fees of two law firms during the appellate process. Consequently, the Court should strike $8,100 in fees incurred by Gardner, Carton & Douglas following Mr. DeBofsky's entry of appearance, (see Exhibit H found under Tab B of Plaintiff's Motion), and the appellant work by Gardner, Carton & Douglas that was duplicated by Daley, DeBofsky & Bryant. See the highlighted entries of Exhibit I found under Tab B of Plaintiff's Motion.

2339489

- 23 -

### 2. The time recorded is patently unreasonable

Gardner, Carton & Douglas was entirely inefficient in accomplishing the basic tasks of litigation. Each step in the litigation was staffed by multiple attorneys, who devoted dozens, if not hundreds, of hours to the routine tasks of litigation. "It may well be that counsel's failure to implement cost-controls, billing monitoring, or proper delegation resulted in constant activity within the hive, but the opposing party . . . should not have to pay for such churning." Pearson v. Edgar, 1999 WL 169415, at *3 (N.D. Ill. Mar. 22, 1999). The Court should reduce Plaintiff's fee request by not less than $350,000 on account of the excess billing. Sullivan v. Gill, 2000 WL 263726, at *2 (N.D. Ill. Feb. 28, 2000) (cutting fee request in half in light of redundant and excess billing). More than 1354.50 hours and over $300,000 in fees for an ERISA case challenging a denial of disability benefits is completely unreasonable and beyond the pale. See Declaration of J. Timothy McDonald attached hereto as Exhibit 3 ("a reasonably experienced ERISA practitioner would have been able to prosecute this case though appeal and attain the same result in 250 hours or less.")

### a. The Complaint

Perhaps most glaring is that fact that it took over 200 hours and more than $30,000 in fees to get a complaint on file. There were 176.9 hours devoted to the complaint and 14.9 hours spent on drafting a chronology. See Exhibit K found under Tab B of Plaintiff's Motion. In fact, Gardner, Carton & Douglas racked up 206.85 hours and $32,733.37 in fees before the complaint was even filed with the Court. See Exhibit L found under Tab B of Plaintiff's Motion. To put the figure in perspective, the amount of money Gardner, Carton & Douglas spent on assembling a complaint was one-third the amount of fees the Defendants spent on the entire case, including the appeal. See Exhibit 1 attached hereto. Even allowing for the fact that one needs to

2339489

familiarize oneself with the facts of the case and review documents before filing a complaint, 126 hours is an exorbitant amount of time for drafting a complaint, and the Court should reduce the amount of time to no more than 12 hours. Riter v. Moss & Bloomberg, Ltd., 2000 WL 1433867 (N.D. Ill. Sept. 26, 2000) (reducing the time to draft a complaint from 14 hours to 5 hours); Purnell v. Kovitz Shifrin & Waitzman, 1996 WL 521401 (N.D. Ill. 1996) (finding 17 hours devoted to drafting a complaint to be excessive, the court reduced the time to eight hours).

### b.    Service and Summons

Gardner, Carton & Douglas billed 11.65 hours and charged $2051.83 in fees to obtain service on the Defendants. See Exhibit N found under Tab B of Plaintiff's Motion. The Court should strike this amount. As both Defendants are corporate entities, counsel need only have obtained the corporate addresses for the Defendant and hired a process server. Or, for that matter, counsel could have requested that service of process be waived. At most, Plaintiff should only be able to collect $200 for obtaining service.

### c.    Discovery

Plaintiff should not be reimbursed for fees incurred for discovery. This case was decided on the administrative record, which Defendants provided, yet Gardner, Carton & Douglas billed 58.5 hours and incurred $11,304.53 in fees for undifferentiated discovery matters; 60.2 hours and $15,092.50 in fees for the motion to compel discovery; 56.8 hours and $13,632.50 in fees preparing subpoenas and responding to the motion to quash; and 39.45 hours and $7,884.00 in fees preparing discovery requests, including requests for admissions. The total amount spent on discovery was 214.95 hours and $47,913.53 in fees. See Exhibit M found under Tab B of Plaintiff's Motion. This entire amount should be subtracted from the fee request.

2339489                                    - 25 -

### d. Summary Judgment

As discussed above, it is difficult to tell how much time was devoted to summary judgment due to block-billing and unspecified entries regarding work done on "motions" and "briefs." But in any event, Defendants object to the amount of time the firm spent preparing for summary judgment in general, as it was unreasonable. Defendants calculate that Gardner, Carton & Douglas spent 744.9 hours and incurred $182,685.25 in fees preparing for summary judgment and 122.65 hours and $31,169 for the motions to strike, which were related to the summary judgment motion. See Exhibits O and P found under Tab B of Plaintiff's Motion. This amount is particularly excessive because the summary judgment was based solely on the administrative record and Plaintiff lost on the majority of the issues he raised. See Schnuckel, 2003 WL 21877632 at *2. The amount Plaintiff seeks in fees for summary judgment is twice the amount of fees all the Defendants spent during the entire course of the litigation. Defendants object to the excessive amount of hours and believe that a reasonable amount of time for Plaintiff's counsel to have spent on summary judgment should be comparable to the amount of time Defendants devoted to summary judgment, which was approximately 100 hours. See Exhibit 1 attached hereto. The Court should then discount the hours for Plaintiff's lack of success on the numerous issues he raised.

### III. COSTS

It is unclear from the motion whether Plaintiff is seeking costs and expenses under Rule 54(d)(1) of the Federal Rules of Civil Procedure or under § 502(g) of ERISA. In either event, Plaintiff is only entitled to those costs provided for in 28 U.S.C. § 1920, which include the (1) filing fees, (2) transcripts, (3) witness costs, (4) copies of documents necessarily obtained for use in the case, (5) docket fees and (6) compensation of court-appointed experts and witnesses. See

Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 411 (7th Cir. 1999) (interpreting "costs of the action" under FLSA with reference to § 1920); Agreendano v. Mutual of Omaha Co., 75 F.3d 541, 544 (9th Cir. 1995) (finding the term "costs" under ERISA § 502(g) only allows for those costs set forth in § 1920); Holland v. Valhi, Inc., 22 F.3d 968, 978-80 (10th Cir. 1994) (same).

A Bill of Costs for $1,119.15 was filed with the Seventh Circuit, which allegedly represents the expenses incurred by the Daley, DeBofsky & Bryant firm for filing fees, photocopying, and binding costs. Plaintiff has not adequately documented the copying charges, and therefore the amount claimed should be reduced. Plaintiff failed to indicate how many copies of the documents were made and for what purpose. This information is required so that the Court can determine whether the copies were necessary for the case, or whether they were made for the convenience of the attorneys. Independence Tube Co. v. Copperweld Corp., 543 F. Supp. 706, 722 (N.D. Ill. 1982). And, as discussed below, the $105.00 for the filing fee is a duplicate entry.

Plaintiff has requested $19,342.81 for costs and expenses that the Gardner, Carton & Douglas firm incurred. Plaintiff provided no summary of the costs he is seeking. Instead the December 22, 2003 spreadsheet lists $19,342.81 in disbursements but provides absolutely no description of the actual expenses. There are individual invoices with costs and expenses, but these invoices only total $18,570.61, for costs and expenses. See Exhibit 4 attached hereto. In addition, they are inadequate as documentation, and Plaintiff has requested compensation for fees that are not reimbursable.

More specifically, Plaintiff has not provided sufficient information to support his copying costs. There are dozens of copying charges that do not specify the rate per page or what was being copied. Northbrook Excess & Surplus Ins. Co. v. Proter & Gamble Co., 924 F.2d 633, 643

(7th Cir. 1991); <u>McClain v. Owens-Corning Fiberglass Corp.</u>, 1663 WL 650524, at *5 (N.D. Ill. 1996). As the copying charges are not documented, they should be stricken. Furthermore, the amount of photocopying expenses is outrageous. Plaintiff either copied a massive amount of documents or the rate was exorbitant. In either event, the amount of photocopying costs is entirely excessive for a case of this nature, and the Court should strike $7,846.11 in photocopying expenses and $410.00 in binding fees.

There are additional expenses noted on the invoices for which Plaintiff would be entitled to reimbursement had Plaintiff explained why incurring the expense was necessary. For example, Plaintiff paid $379.75 for transcripts and $72.00 in court reporter fees, yet Plaintiff has not explained what transcripts were requested or why. Consequently, the Court should deduct these expenses from the Bill of Costs. Plaintiff had also requested that he be reimbursed for court filing fees. Normally, filing fees are a reimbursable expense, however, Defendants are puzzled as to why Plaintiff has requested reimbursement for <u>four</u> court filing fees. Plaintiff filed suit in this District on May 23, 2000, which would account for the $150.00 billed on the June 26, 2000 invoice. Plaintiff then filed an appeal with the Seventh Circuit. Gardner, Carton & Douglas billed $105.00 for the Seventh Circuit's filing fee <u>twice</u>, once on the November 15, 2001 invoice and a second time on the December 7, 2001 invoice. Daley, DeBofsky & Bryant has also claimed the $105.00 filing fee on its bill of costs. Such double and triple billing is not only inappropriate, but is potent evidence that Gardner, Carton & Douglas's statements are not credible or reliable. Consequently, at the least $210.00 should be subtracted from the amount of costs Plaintiff is seeking.

Defendants also object to expenses that are not reimbursable. Under Seventh Circuit law, electronic or computerized research is not compensable. <u>Haroco v. American Nat'l Bank &</u>

Trust of Chicago, 38 F.3d 1429, 1449-41 (7th Cir. 1994); Harkin v. Riverboat Serv., Inc., 286 F.

Supp. 2d 976, 983 (N.D. Ill. 2003). In light of the resources that are now available, it is common

practice that clients no longer pay for research in electronic databases. Therefore, the Court

should strike the $5,652.31 in Westlaw fees and $1,113.74 in Lexis fees. The Court should also

strike charges for the following non-reimbursable expenses: $163.45 for "local transportation,"

such as cab fares to the courthouse; $401.55 in messenger services, and $240.42 in overnight

delivery charges. Stark, 2003 WL 21223268 (citing to Wahl v. Carrier Mfg., 511 F.2d 209, 217

(7th Cir. 1975)); see also Keifel v. Las Vegas Hacienda, Inc. 404 F.2d 1163, 1170 (7th Cir.

1968). Furthermore, Defendants cannot be held accountable for $1,130.30 for facsimiles, $71.33

in general telephone bills, and $2.75 for postage. Id.

  In addition, there are expenses for which Plaintiff seeks repayment, but with which

Defendants are not familiar. Plaintiff had provided no description of the services or why they

were necessary, and therefore, the Court should strike the following amounts: $204.94 for

"Primark," $35.41 for "Dialog," $223.55 for "Courtlink," and $7.00 for "CDB Infotek."

## CONCLUSION

  Plaintiff has failed to established that he is entitled to attorneys' fees and costs.

Defendants did not defend this lawsuit in order to harass Plaintiff or for no good reason.

Defendants litigated this case in good faith and their positions were substantially justified.

Therefore, under Seventh Circuit law, Plaintiff cannot meet his burden and the Court should

deny Plaintiff's motion for fees and costs. But if the Court were to determine that Plaintiff is

entitled to a fee award, which it should not, the amount Plaintiff is requesting should be

significantly reduced. Plaintiff's documentation is inadequate and internally inconsistent.

Plaintiff's counsel not only billed excessively, but they also caused Defendants to incur

substantially more in fees than was necessary. Among other things, Plaintiff filed repeated discovery requests and motions to compel, some of which were filed after the Court already had made clear that discovery was not proper in this ERISA case. Plaintiff also took extreme positions that simply were not well founded in either the law or the facts. If the Court were to award any fee to Plaintiff, it would be unreasonable to award more than $25,000.

In general, Defendants are shocked by the amount of fees requested by Plaintiff's counsel. In light of the fact that Defendants spent less than a fourth of the amount of fees defending this suit, Plaintiff's request is patently unreasonable. For the myriad of reasons discussed above, Defendants object to the fees requested. This Court should deny Plaintiff's request for attorneys' fees in its entirety. In the alternative, the amount of fees and costs should be significantly discounted.

Respectfully submitted,

THOMPSON COBURN LLP

By _____
Richard J. Pautler, #03128941
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6000
FAX 314-552-7000

Attorneys for Defendants Xerox Corporation
Long-Term Disability Income Plan, Xerox Corporation

CHARYSH & SCHROEDER, LTD

By _____
Michael J. Charysh
33 North Dearborn Street
Suite 1300
Chicago, Illinois 60602

Attorneys for Health International, Inc.

*SEE CASE*

*FILE FOR*

*EXHIBITS*